May it please the Court, Ashley Simonson, Covington & Burling for Appellant Cedric Allen. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal. Okay. We are here today principally because the District Court invaded the province of the jury in its application of Rule 12b-6 and Rule 50 to prevent the jury from deciding Mr. Allen's claims for excessive force and deliberate indifference to serious medical needs against Defendant Sergeant Damon Battles and from deciding Mr. Allen's claim for deliberate indifference against Dr. Fellon. I'd like to use my time today to focus on Mr. Allen's claims against Defendant Battles, beginning with the Court's erroneous decision under Rule 50. At the close of Mr. Allen's case below, the District Court granted defendants motion for judgment as a matter of law on the grounds that, and I quote, there was absolutely no evidence presented as to Defendant Battles being involved whatsoever in this, nothing from the plaintiff, excerpts of Record 14. On appeal, defendants do not even try to defend that conclusion, nor could they, as Mr. Allen's testimony made clear, that Battles ordered that a spit mask be placed over Mr. Allen's head and refused to remove it despite the fact that his nose was clogged with mucus from having recently been maced several times. He was bleeding profusely from the lower lip, and he told Battles that he could not breathe. Yeah. I think what happened here, and maybe you figured it out in the same way that I have, Allen's testimony doesn't say his name Battles. He says Sergeant Damon, which is his first name. I agree with you, Your Honor. And so I think the judge didn't understand who he was talking about. I agree with you, and I think that's the easiest explanation for what happened here. Unfortunately But the judge is clearly wrong. I mean, there's clear testimony that Sergeant Battles did this. That's right. So what do we do about that? So what this Court does about that is reverses and remands for a new trial on Mr. Allen's claim for excessive force. Well, do we decide de novo whether or not – I mean, I don't know the answer to this, because this was not a 12 v. 6. Now, this was during the trial. Do we now look at the question of whether the actual testimony would have supported the claim or not? This Court does not conduct – it conducts a de novo review of the district court's Rule 50 decision. But this Court cannot – cannot sustain that decision on essentially grounds that the district court – Why not? Because under Rule 50, the movant is required to give notice to the nonmoving party of the deficiencies in his evidence of which the moving party is complaining. And this Court has made clear that the obligation of the moving party to point out the deficiencies is particularly important with respect to pro se litigants. And it is because in this instance, for example, that Mr. Allen was not given notice of the supposed deficiencies of which defendants now complain, that he was not given the opportunity to introduce evidence that may have cured those deficiencies. Now, I don't think that's the reason. And that's the reason. It is not – my understanding is that Judge doesn't have to allow him but could allow him to do that. Is that right? They have to allow him and he would have – yes, they have to have given him the opportunity to have done that. Is that right? I mean, this is at JMOL. I think it was done at the close of all – the motion was made at the close of the evidence. It was made at the close of Mr. Allen's case. So at the close of his opening case, before defendants put on their case.  The motion, the only arguments that defendants made. The motion. I move for judgment as a matter of law because what was the basis of the motion? The basis of the motion with respect to Mr. – with respect to Defendant Battles was only that Battles was not present during the incident and, along with the other defendants, that he had not kicked or hit Allen. Now. Was there any basis of the motion on an alternative ground that the actions attributed to Battles did not constitute excessive force? Well, theoretically, defendants could have presented that argument below as they are on appeal. But perhaps I didn't. Was that part of the motion? It was not part of the motion that. That's what I wanted to know. That's right. It was not part of the motion. There was insufficient evidence as to Defendant Battles. The only ground for the motion was that Battles didn't have anything to do with it. There's no evidence that Battles did anything. That's right. And it may be helpful if I could walk the Court through kind of the chronology of it. You've answered my question. Thank you. Okay. All right. Yeah. And so, you know, just to sort of respond a bit more to, you know, why the reversible error standard applies here, you know, the Court made clear in its decision in Rand v. Rowland that the reason for the reversible error standard in this context is that there is no opportunity for this Court to assess on the record what type of evidence Mr. Allen might have put in had he been given notice of the deficiencies in his evidence. Well, we kind of know. I mean, he had his testimony. One thing, I do have a question. When there is a motion for reconsideration filed by Mr. Allen, again, pro se, you know, he's pretty good. He says, I testified that Damon Battles, he now uses his full name first and last, put the spit mask on me. And in addition, we got testimony from his name is Beckwith or Hackworth? Hackworth. Hackworth. Well, I went back and I read all of the Hackworth testimony that's in the ERs. I did not go back and read the entire transcript. But there's nothing in Hackworth's testimony in the ER that says anything about Battles putting that on. Is there something in the transcript that was not in the ERs that would support what he says in his motion for reconsideration? I am not aware of any testimony by Hackworth speaking to Battles having ordered that a spit hood be applied to Mr. Allen. Or that he put it on. The testimony at issue was Mr. Allen's testimony. In addition to the testimony of Battles that he was present during the incident and later was called as a witness to the event, that testimony. The only claim that was actually made against Battles was an excessive force claim. Is that right? No, Your Honor. The allegations of the complaint stated a claim both for excessive force and deliberate indifference. I thought that wasn't so. And that the magistrate judge became confused about it and said that there was a deliberate indifference claim. But there really wasn't one. And it wasn't tried that way. Your Honor is correct that the deliberate indifference claim did not go to trial. Okay. And that is because the district court below concluded that the allegations of Allen's complaint. But I thought there actually wasn't a separate deliberate indifference claim. In other words, I think it was interpreted as a deliberate indifference claim. But it really wasn't one. It was always ever an excessive force claim. Are you claiming that we should reverse this also on the 12b-6 with regard to deliberate indifference or not? Yes. I am also arguing. And you are contending that it was in the complaint. It was in the complaint. The allegations of the complaint construed liberally as they must be with respect to a pro se litigant clearly stated a claim for deliberate indifference to serious medical needs in addition to excessive force under the Eighth Amendment. And I would be happy to turn to that now, Your Honors, if you have no additional questions about the excessive force claim. As I noted, the jury should have been permitted to decide whether Battles' actions in addition to constituting excessive force also showed deliberate indifference to serious medical needs. Mr. Allen's here, Mr. Allen's Third Amendment complaint really provided very similar allegations to the testimony that he presented at trial. So in thinking about what sorts of facts were before the district court in analyzing the sufficiency of this claim, those are the facts at issue, that Battles ordered that a spit mask be placed over Mr. Allen's head, that his nose was filled with mucus, that he stated he could not breathe, that his lip was bleeding profusely, and that in response, Battles said, if you're talking, you're breathing, and refused to remove the mask. Now, as the Danley decision cited in Appellant's papers illustrate, failing to treat pain can constitute both excessive force and deliberate indifference to serious medical needs. But in the second and third complaints, it was alleged specifically as an excessive force claim against Battles. Mr. Allen did specifically describe the claim against Battles as an excessive force claim. However, the magistrate judge did analyze that claim as a deliberate indifference claim, and the allegations of the complaint supported a deliberate indifference claim. And pro se complaints are to be construed liberally to plead claims not only that he may have, you know, Mr. Allen may have expressly stated, but also a claim that is supported by the allegations. And in this case, the magistrate judge before the district court reviewed this claim had analyzed it under a deliberate indifference standard. Now, defendants concede in their brief that a serious medical need may be present if the official's conduct results in the unnecessary infliction of pain, including the painful effects of pepper spray, as this Court found in Clement v. Gomez. And the Al-Asadi, Herndon, and Danley cases cited in Mr. Allen's reply brief, all of which involved claims for deliberate indifference based on correctional officers, failure to treat an inmate's difficulty breathing, only reinforced this. At bottom of the page, this is a medical need. I mean, we know that, in fact, he could breathe. He did breathe. He may have been uncomfortable, but he did breathe. So is it — so my understanding is there's two prongs. There's the pain prong, and then there's the, you know, actual medical difficulty. Where is — where would this fit? Well, under the test for deliberate indifference, there's an objective component and a subjective component. The objective component is the serious medical need. Right. The serious medical need can be met by a showing of unnecessary or wanton infliction of pain. Right. Or further significant injury. Right. So which one is this? In this case — If he did say he was in pain and he didn't have any consequences from it, so which one is it? In this case, I submit, Your Honor, that Mr. Allen alleged both. I think it's more clear that he alleged the unnecessary and wanton infliction of pain. I think it is self-evident that consciously depriving someone of oxygen, not only does that evince deliberate indifference to a serious medical need for oxygen, it also demonstrates the sadistic and malicious application of force to cause harm. It's why this is a — Are you going to address the last — the claim against the doctor? I would be happy to address any questions that Your Honor has, but I — Mr. Allen was intending to submit that argument on the briefs. Are you going to talk at all about Dr. Fallon or about the instructions regarding the shoe? Again, I'm happy to answer any questions that Your Honor has about Dr. Fallon. I do have a question about Dr. Fallon. According to the allegations — and this one went off on 12b-6 — Dr. Fallon removes the stitches after a short period instead of after a long period. He starts out with some very blunt scissors. He then uses — I don't even know what a plastic scalpel is. Maybe such a thing exists. It causes unnecessary pain and bleeding. It sounds pretty de minimis to me, even taking it as, you know, here are the allegations of the complaint. I'll treat them as true. Well, there's no — Why does this rise to the level of deliberate indifference? It rises to the level of deliberate indifference, Your Honor, because in removing Mr. Allen's stitches after they were in for only four days, when he had a cut that was through and through his lip, all the way through, when they were not to come out for 10 days — Well, how do we know 10 days instead of between 6 and 7 days? Mr. Allen alleged in his complaint that the stitches were to come out 10 days after they were — I don't know whether 4 days, 7 days, or 10 days was the right amount of time. How am I supposed to know that? Well, you don't necessarily need to know that, but you can infer reasonably from the allegations of the complaint that 4 days was not a reasonable amount of time. Well, 4 days wasn't what the original doctor thought, but that doesn't mean it wasn't reasonable. But it wasn't reasonable drawing all inferences in Allen's favor and construing the allegations of the complaint in his favor. It is clear that removing stitches 6 days before they were to — at any point in time that requires the tearing of the skin in order for the stitches to come out would expose a prisoner to a risk of potential infection. And, you know, I think the fact that Mr. Allen was left with this lifelong scar, as he describes it, is further evidence that these stitches came out too early. But the — But the thing that's — and this may be why you decided not to argue it. The problem is that why would this doctor — I mean, there's just no reason given why this doctor would be doing something to hurt him on purpose, essentially. And I agree with Your Honor that there's no particular malicious — It could be. But it isn't said that maybe he was only there that day, so that's — and he wasn't going to be there for another 2 weeks, so that's why he did it that day. There could be — I mean, there are lots of possibilities, but none of them are alleged, which lent any credibility to the notion that he knew that this was going to be a problem and did it anyway. I think what lends credibility to the allegation that he did it intentionally and maliciously is the fact that he had to tear Allen's skin in order to get the stitches out. Now, why in particular he had that malicious and sadistic intent is something that could be — That's one inference. If Your Honors have no additional questions, I'd like to reserve the remainder of my time for rebuttal. Okay. You are now at minus 41, but we will give you a chance to respond. Thank you. Meaning you owe us 41. And I didn't hear anything about the evidence regarding the shoe. And if you — I'm happy to answer questions about that. Good afternoon. If it may please the Court, I'm Lawrence Bragg, Deputy Attorney General, representing the defendants and police in this particular case. In this case of excessive force arising out of an incident where the — that was initiated by the inmate who kicked a correctional officer, the district court correctly dismissed the claims against Dr. Fellin because those allegations, which were in the Third Amendment complaint, constituted a mere difference of medical opinion, which is not actionable under the Eighth Amendment. The district court also correctly dismissed the deliberate indifference claim against defendant Battles. Was there a deliberate indifference claim against defendant Battles? Well, the magistrate judge thought so. In the magistrate judge's findings and recommendations, he analyzed that there was a deliberate indifference claim and then concluded that it wasn't cognizable and dismissed it in the district court. So tell me why it was — if it existed, why was it deliberately — why was it properly dismissed? It was properly dismissed because the only allegation that was made in the complaint was that the spit hood was applied and that Mr. Allen was having difficulty breathing through it, through his nose, but he could breathe through his mouth, and that — and that when he was able to speak and say to Sergeant Battles, I'm having difficulty breathing. Did he say, I can breathe through my nose, but I can breathe through my mouth even though I can't breathe through my nose? Is that what he said? Not in those words. The allegation was — Well, people can speak even when they're obstructed. They, you know, I mean, with difficulty they can speak. Well, I think conceptually that's true. But I think what the facts that were alleged in this case was, is that Mr. Allen couldn't speak and Sergeant Battles responded that if you're talking, then you're breathing, and the Third Amendment complaint also alleged that he was, in fact, able to breathe. And so if, for example, he could breathe, you know, with great difficulty and, you know, was getting much less oxygen than is normal, and then what? Well — I mean, that's what I understood him essentially to be saying. Well, I — I mean, it isn't true that if you speak — if you speak, you can breathe, yes, meaning you can at least minimally breathe, but it doesn't mean that you can breathe the way one's supposed to breathe. Well, there were no additional facts beyond the fact that he complained to the sergeant that he was experiencing difficulty in breathing. There were no facts, for example, that he was gasping. There were no facts that he was choking. There were no facts that he was gagging. I can't infer all that. I mean, the real question is whether we ought to be doing this at all, in that Battles isn't a doctor. He wasn't really — and the complaints as they went along didn't really allege a deliberate indifference claim. I would agree with that. And also, I think that in the magistrate's findings and recommendations, there was a comment about qualified immunity as well, and I think that that would apply to Sergeant Battles because — What about the other claim against Battles, the one that did go to trial? The excessive force claim. The excessive force claim, the Rule 50 motion was properly granted against — on the Rule 50 claim for similar reasons. The only — there was evidence that — that he was experiencing difficulty breathing, but also — Was that the basis for the — what was the basis for the Rule 50 motion? The basis for the Rule 50 motion was that there was no testimony that Sergeant Battles had been involved in the excessive force. And that's just wrong? That's — that's correct. And there's — And the district judge adopted that, and he was just wrong. No, I don't — the district judge — to the extent that the district judge concluded that Battles wasn't involved, yes, the district judge was wrong, but that's not the end of the story. There were three different incidents that made up this particular claim. There was the incident in the section, there was the incident alleged in the rotunda, and then there was the incident involving the spit hood. And all of the testimony, or I should probably say none of the testimony, indicated that Sergeant Battles was involved in the section or that Sergeant Battles was involved in the rotunda. Yeah, but the entire complaint against Sergeant Battles by Mr. Allen was with respect to the spit hood. Yes. Yes, it was. And so looking at the evidence — And you make a motion saying that Battles had nothing to do with anything, including the spit hood. If you're complaining about being sent back to retry this when it's your own darn fault — Well, then I think to respond to that, Judge, then I think what we're arguing about is form over substance, because if you look at what the evidence was, Mr. Allen was not misled about anything where he failed to provide testimony, as counsel alleged. Mr. Allen rested his case before he himself testified, and then the Rule 50 motion was made, and Mr. Allen was allowed to reopen his case. And when he reopened his case, he testified not only about the events in the section and the events that he claimed in the rotunda, but he also testified about the application of the spit hood and exactly what happened. Oh, so I may be misunderstood in the sequence. So the JML motion is made and then granted, and then Allen puts in his testimony? I don't think it was granted. I think we can go back to the transcript, but what happened was there was a discussion on the record as to whether or not Mr. Allen wanted to testify, and he said that he was, and he was allowed to reopen his case. No, no. But let me — I just want to make sure I understood it, because my understanding is that Allen had already testified with respect to what Battles had done and that the JMO motion — JMOL motion was made after that. Am I wrong about that sequence? Yes, sir. So he does testify. So after we get the ruling, he then testifies and says, Sergeant Damon put the spit hood on me. But then the judge sticks with the motion? Sticks with the answer after that testimony? Going back to — going back to the record, Your Honor, on excerpts of Record 211, Reporter's Transcript 43, the defense made the motion saying that Battles wasn't involved. Mr. Allen says, I'd like to take the stand and allow my testimony to be evidence if that's allowed. The Court says, well, you've rested, but if you're going to ask to reopen, then that's another thing. Okay. So he did. And then the judge rules again, fine a motion for a new trial, right, on January 27, 2004, says that he testified that Battles ordered the officers. However, Petitioner's credibility was impeached. There was no reasonable evidence that Defendant Battles was present and participated in the use of excessive force, and judgment as a matter of law was appropriate. Right? So the district judge did grant after his testimony a judgment as a matter of law. Well, after Allen testified, yes. And never went to the jury. Bottom line, never went to the jury. Battles never went to the jury. Okay. Well, wait a minute. I'm just reading the transcript. I'm on page 449 of the transcript. We have Allen testifying, but what's his name? Damon. Sergeant Damon. He ordered the spit mask to be put on. I'm now on 478 of the transcript. The judge is saying there's absolutely no evidence presented as to Defendant Battles being involved whatsoever in this. So he's just heard the testimony that Sergeant Damon did it, and we're now 30 pages later in the transcript, and he says no evidence. And you guys just sat there and let him say that? Yeah, that is what the record reflects. And then what the magistrate judge did was rule on his credibility, right? In the motion for new trial. Right. And that was in a specific discussion about whether or not it was harmless error. Okay. So I think that needs to be taken in context. I don't understand. It never went to the jury. How can he have a motion for a new trial? Well, the motion for new trial, if I recall, was based on several points, and one of the points was that he should have gone to the jury, right? So it can't be that he's, in deciding whether it should have gone to the jury, he says he wasn't credible. I'm not defending that, Your Honor. My claim — What are you defending? My argument is that the granting of the judgment under Rule 50 is reviewed de novo, as I think Your Honor pointed out to appellant. And if you look at all the evidence that's in the record, that doesn't constitute a claim for excessive force against battles. Well, we were told, you can tell me whether it's true or not, that there is cases where, because you have to have a specific notice as to what the claim is, that we shouldn't be looking to see if there's something else to justify it. Is that right or wrong? Well, I disagree with that, because in this particular case, after Mr. Allen was allowed to reopen his case, he said everything that there was for him to say about what happened in this particular incident. He was granted every opportunity to present his case, not only as to what the other defendants did, but also as to what Sergeant Battles did. So, you know, he was not prejudiced at all. But you never argued to the district judge that it should be denied nonetheless because he didn't make out a claim. No, we didn't argue that. The argument at the district court was solely that Battles wasn't involved. And that's why the ---- And, of course, the evidence was directly contrary to that. You could disbelieve Allen, but that's what he said. And it seems to me if the question is was Battles involved or not, that at the very least goes to the jury. Well, I don't know, because I think that the Rule 50 motion was initially made at the close of Mr. Allen's case. And let's say that the judge had, the trial judge had denied it at the close of Mr. Allen's case, and it was renewed again at the close of the defense case. And if it was renewed again at the close of the defense case, then it might have been argued, in addition to the fact that he wasn't involved, also arguing, as I'm arguing now, that there were no facts showing excessive force. Do you want to say briefly why that's true? There are no facts about, in the record, about excessive force because what happened ---- because the ---- because of the application of the Hudson factors, there was a threat because Mr. Allen admittedly was bleeding and had mucus and saliva as a result of the application of the pepper spray, there was a threat that he could transmit those bodily fluids to the officers that were escorting him to the affirmary, keeping in mind that Mr. Allen had just assaulted officers when he was in the section. And so I think taking his conduct that he had just been engaged in, in assaulting officers while he was being escorted, there was a threat that he could have, again, tried to come into contact with the escorting officers through a head butt or some other means to transmit those bodily fluids. And so there was a need to apply the spit mask. And the purpose of the spit mask was antiseptic? There was testimony from the defense expert, Captain Smith, as to the purpose of the spit mask. Was it to stop people from spitting? No. I disagree, Judge. I think Captain Smith testified that the purpose that a spit mask, or a spit hood as he referred to it, is applied any time that there is a danger of transmission of bodily fluids from an inmate to correctional staff. And I would refer to excerpts of Record 239, Reporter's Transcript 592. And so there was a threat because of Mr. Allen's admitted condition. So I'm on page 239. What am I supposed to look at? All right. Starting at line 4, it says the spit hood is used when there is a threat that bodily fluid may be transferred from the inmate to staff. And so it says, A, who's talking? That is defense expert witness Smith. Let me look back and make sure I'm here. ER 239, you're saying, talks about the spit hood? Yeah, all right. Well, spit hood, he refers to it as a spit hood. Got it. Okay. And so there was a threat, especially in light of Mr. Allen's previous conduct during the past few minutes, and that the officers that were escorting him, including Sergeant Battles, were entitled to deal with it. And it didn't result in any harm because there was no actual asphyxiation, gagging, fainting, anything like that. Your position is that even if the judge were wrong about Battles being involved in applying the spit mask, the spit mask was, as a matter of law, not excessive force and was not deliberate indifference? Under the facts of this particular case, yes. All right. Yes. So that the result reached was correct, even though the wording that was used might not have been. So. Can you very briefly address the extensive evidence about the shoe inmates and their – I understand you refer – I found your brief actually dismaying on this because you kept talking about evidence that he was in the shoe. That's not the evidence. They weren't complaining about evidence that he was in the shoe. We understand that. Everybody understood he was in the shoe. And there was, as I understand it, a testimony from various officers about, you know, why people get in the shoe. But then you had an expert testify who went into great detail about certain people in the shoe and all the terrible things they'd done. And why was that appropriate testimony? That was appropriate because it pertains to the threat that was perceived by officers. Well, I understand. He keeps saying that. Rivera, Quillen, and Munoz. All right. But they testified by themselves what threat they perceived and why in general. And this expert, I mean, he could have said generally, but then he starts going into a particular person who pulled a knife and so on and so on. And the inference to the jury was that this guy was like that and was going to do it and it was really in the end no different than direct testimony about his own prior acts, which wouldn't have been allowed. Weren't allowed, in fact. It was a motion to eliminate. That's correct. It was addressed during the motion to eliminate. And my response to that, Judge, is that it could not have been unduly prejudicial to Mr. Allen because of Mr. Allen's conduct that precipitated this whole incident. So why did you put it on? Pardon? So why was it put on? It was put on. Other than to be prejudicial? I mean, I always feel when this happens all the time, we have the prosecutor standing up here and saying it didn't make a difference. Well, then why did you do it? When it was obviously marginal, at least. It was done because we felt that there was a need to explain the first portion of this incident, the portion in the section. In the section, Mr. Allen kicks it at Officer Rivera, and Officer Quillen immediately takes him down, or at least tries to. And when Officer Quillen has problems taking Mr. Allen down, then Officer Rivera, after recovering from the kick, applies the pepper spray. And they take him to the ground, and then they put on leg irons. This wasn't a situation where anybody said, stop, Mr. Allen, don't kick again. There wasn't a situation where anybody said, if you don't stop, we're going to pepper spray you, or if you don't stop, we're going to apply leg irons. And we felt that there was a need to explain to the jury why the response was the way it was, as quickly as it was. And the reason that we wanted to explain it to the jury was because Mr. Allen, as a SHU inmate, posed a greater danger than other general population inmates. So therefore, it was necessary to immediately take him down to the ground. It was necessary to immediately apply the pepper spray when he was resisting. It was necessary to then apply the leg irons when he continued to disobey the orders to stop resisting. And that's why it was important for the first, what I'm calling the first portion of the incident, and to explain why that that was not excessive to the jury. That's why it was important. Roberts. Okay. Thank you. Thank you very much. Thank you very much. We're taking over time. Let's put two minutes on the clock, and that will be your rebuttal time. Thank you, Your Honor. I'd like to address a few of the points made by this State. The first is with respect to your question, Judge Berzon, about why there should have been why there was a deliberate indifference claim stated here. On excerpts of Record Page 296, which is part of Mr. Allen's third amended complaint, he expressly alleged that he told Sergeant Battles that he could not breathe, and Sergeant Battles ignored it. And the clear inference to draw from that allegation. What about the response on the Rule 50, i.e., that he was allowed to testify? In other words, the question is, should we be going beyond what the question of whether he was there or not, and looking at the elements of the excessive force claim? No. No, you should not be going beyond that here. Because what happened, the sequence of events was defendants moved for judgment as a matter of law. They stated there was no evidence that Battles had participated. Mr. Allen reopened his testimony. He testified as to the whole sequence of events, including that Battles had ordered her spit mask be applied. He then rested his case, and the Court asked defendants, do you wish to supplement your motion? Defendants said, well, we would only add that Mr. Allen admits that he kicked these officers, thereby provoking the force that they used. That was an opportunity, again, for defendants to direct the Court to the deficiencies in his evidence of which they now complain, and they failed to do so. And therefore, again, as a pro se litigant, he was not put on notice of those supposed deficiencies. I suppose it's also true that what he was — when he testified, what he was aiming to do was to demonstrate that Battles — to say that Battles was there, to overcome the claim that Battles wasn't there. Yes, and I think that that was — But he didn't really have an opportunity to cure the record as to the other issues because it was never arranged. That's exactly right, Your Honor. And what do we do with the — I mean, the general rule is we can affirm on any ground, and we have evidence in the record that tells us why spit hoods or spit masks are used. And it seems to me in this circumstance that a spit hood or spit mask, if properly administered, that is to say so that a person doesn't suffocate, was appropriate in this circumstance. So why don't we just affirm on any ground either because there's no violation or at worst there's qualified immunity? Because, Your Honor, those questions are — were questions — those questions turn on resolutions of facts that were for the jury to decide. Well, why is that so, though? You see, I'm not sure that it really is for the jury to decide. If we have testimony that a spit hood is applied for this purpose, it was applied when this purpose clearly was in play. And the only question really is the degree to which his breathing was impaired and Officer Battles has qualified immunity as a defense to whatever happened. Well, as an initial matter — That seems to me really hard to come out with a supportable verdict for Mr. Allen on this point, whether we call it deliberate indifference or excessive force. Well, as an initial matter, Your Honor, as to the need for the spit mask, Defendant Battles did not offer any testimony as to any perceived need for a spit mask. The only testimony that defendants are able to point this Court to is the testimony of their expert offered after the close of Mr. Allen's case as to the supposed need for a spit mask. I would also point out to the Court that defendants testified incredulously that they saw no blood on Allen's lip, completely undermining the supposed need for the application of the spit hood that defendants now urge this Court to find as a matter of fact on appeal. Of course, Mr. Allen alleges that he was bleeding profusely from his lip, but were the jury to decide otherwise, they could still conclude that he didn't think— It was undisputed that his lip was so badly cut that it needed stitches. It seemed to be undisputed that he was having trouble because of the administration of the pepper spray and to use the vernacular used in the testimony that there was lots of snot coming out. I mean, it's undisputed that there were lots of fluids. And so then the question becomes, given that Mr. Allen was having such trouble breathing and given the reasonable inference that a jury could draw that he was nearly asphyxiating, could this – these correctional officers' decision to leave the spit hood on because of some supposed need to prevent the transmission of bodily fluids, could that – was that absolutely as a matter of law necessary? And I would submit to Your Honors that— Sotomayor, did the spit hood question go to the jury with regard to other defendants? No, it only went to the jury with respect to Palace. Why was the expert testifying at all if the case – if it was already out of the case by then? I'm not sure why the State decided to put on that evidence. And to turn to the State's other point, if I may, Your Honors, I realize I'm over my time, regarding why the State put on the evidence regarding the – this very prejudicial and inflammatory evidence about SHU inmates' proclivity toward violence and insubordination. They say that they offered this evidence because they needed to explain the response to the initial kick that Mr. Allen admits that he gave. But as they acknowledge in their brief, Mr. Allen did not take issue with the application of force that occurred as a result of his kicking the officers. And so there was very little, if any, probative value to any of this evidence, even if you're talking about sort of the first portion of the incident. But did the officers also testify – each testify themselves as to why people were in the SHU and generally? The officers themselves testified, yes, as to generally the fact that SHU inmates were – presented a greater threat, required greater security measures to escort that sort of thing. In addition, they offered such testimony as these are the worst of the worst offenders in the prison. They – there's a chance that at any point they could spear you. And, of course, as Your Honor pointed out, there's the testimony of their expert, which could have absolutely no probative value whatsoever. Are you complaining about their testimony or just the expert? I'm complaining about the testimony of the defendants as well as the testimony of the experts. And that testimony is laid out at pages 44. That of which was subjected to a trial. That's right. It was subjected to a trial, but the State does not – does not dispute that Mr. Allen preserved his objection through his motion in limine and through argument at the motion in limine hearing. But I thought the motion in limine was directed at testimony about him. The motion in limine hearing was directed at his prison disciplinary record as well as evidence about SHU inmates generally. So it was about both. And Mr. Allen objected to the introduction of both forms of evidence. Okay. We've taken you over time. And you've then used up all your time and then a little bit. Before we adjourn on this case, I would like to thank your firm for doing this. I gather you're doing it pro bono. So we very much appreciate the help. I'd compliment you, too, but you're being paid for it. But both arguments were very good. And this case is now submitted for decision. So Allen v. Rivera, submitted. And we're in adjournment. Thank you. Thank you, Your Honors.
judges: Fletcher, Berzon, Bea